[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff instituted the present action seeking to recover monetary damages for medical malpractice on the part of Winsted Memorial Hospital. The plaintiff claimed that a stroke he suffered was caused by the negligence of employees of the defendant hospital and, as a result, he has become partially paralyzed and wheelchair bound. The jury returned a verdict for the plaintiff and awarded damages in the amount of $450,000.00 in economic damages and $350,000.00 in non-economic damages. The defendant hospital now seeks to have the verdict set aside and claims that the verdict was contrary to the law and evidence and was excessive. The defendant hospital also filed motions for remittitur and for judgement notwithstanding the verdict. Some aspects of these motions essentially seek to reargue issues decided by the court during the course of the trial. Since those issues were already decided after considerable argument and deliberation, the court's present discussion of them will be brief. This memorandum and discussion will be more detailed as to other post-trial issues that were not the subject of considered decision. For the reasons set forth below all three post-trial motions must be denied.
It is with some hesitancy that the court approaches a motion to set aside a jury verdict because of the gravity of the issues involved. "There are serious constitutional issues posed by setting aside a jury verdict. This is so because [l]itigants have a constitutional right to have issues of fact decided by the jury . . . The right to a jury trial is fundamental in our judicial system, and . . . the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of a trial by jury includes the right to have issues of fact as to which there is room for reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court. . . . Accordingly, a court should move cautiously in CT Page 6892 deciding to set aside a jury's verdict." (Brackets in original; citations omitted; internal quotation marks omitted.) Zarrelli v. Barnum FestivalSociety, Inc., 6 Conn. App. 322, 505 A.2d 25, cert. denied, 200 Conn. 801,509 A.2d 516 (1986).
 I.
The defendant first claims that its constitutional right to a fair trial was violated because of the jury's confusion and subsequent misapplication of the law. Specifically, the defendant claims that the court should have given the jury a copy of the its entire charge as the jury requested, or should have reread the entire charge to the jury. Further, the defendant now claims that the court should have reread the charge on proximate cause and damages after subsequent instructions were given on standard of care.
In this case, the jury received instructions on March 22, 2001, from approximately noon until shortly after 1 p.m. The court adjourned for lunch, and the jury began deliberations at approximately 2:15 p.m. The jury was provided with the exhibits as they began their deliberations. The plaintiff introduced 30 full exhibits and the defendant 36 full exhibits. The exhibits included approximately six hundred pages of hospital and medical records, letters, notes and memoranda.
Shortly after beginning deliberations, the jury passed a note to the marshal, which was contained in a large envelope that was part of an exhibit. Within a few minutes, the jury, apparently realizing its mistake, submitted a second note to the marshal in an envelope provided by the court for that purpose. Both notes requested that the court provide the jury with a copy of its charge.[1]
The court then met with counsel in chambers, discussed the request for a copy of its charge, and took suggestions from the parties. See Practice Book § 16-28. The parties did not agree on whether the jury should receive a copy of the charge. When considering whether to give the jury a copy of its charge, the court was mindful of the potential of confusing the jury. The jury was faced with deciding a case requiring the review of over six hundred pages of exhibits. The potential of overwhelming the jury at the onset of their deliberations existed if they were initially provided with a copy of the court's charge.
The jury was recalled to the courtroom whereupon the court informed them that they were not entitled to a copy of the charge as a general rule, and that if they wanted to rehear any specific instruction, they should submit another request to the court. Neither counsel took any exception to the court's subsequent instructions to the jury. CT Page 6893
Shortly thereafter, the jury submitted another note to the court. In its request, the jury asked the court to reread the state statute on malpractice. Again, the court met with counsel in chambers, discussed the jury's request, and took suggestions from the parties. Both counsel agreed with the court that the jury was referring to General Statutes § 52-184c, dealing with standard of care, as that statute was specifically cited in the court's charge.[2]
The jury was recalled to the courtroom whereupon the court reread the charge which dealt with General Statutes § 52-184c and the standard of care. The jury was then instructed that if they had any further requests, they should submit them to the court and they would be addressed. Again, neither counsel took any exception to the court's subsequent instructions to the jury.
The defendant cites State v. St. Pierre, 58 Conn. App. 284, cert. denied, 254 Conn. 916 (2000) in its motion. "Practice Book § 42-27
provides: if the jury, after retiring for deliberations, request additional instructions, the judicial authority, after providing notice to the parties and an opportunity for suggestions by counsel, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions. Our Supreme Court has recognized that [c]larification of the instructions when the jury or one of its members manifests confusion about the law is mandatory." (Internal quotation marks omitted.) Id., 292.
The court precisely followed the procedures outlined in the Practice Book and in St. Pierre. The court does not agree with the defendant that the jury was confused by the instructions. The questions asked by the jury were not indicative of confusion in the minds of the jurors, nor were they interpreted as such by the court or counsel for either party.
At oral argument, the defendant urged the court to consider the jury's confusion in light of the case of Silvester v. Kerelejza, 158 Conn. 433
(1969). In that case, the jury asked an ambiguous question some five days after receiving the court's charge. The situation presented here is entirely different. On the same day that the jury received the charge, the jury asked for a specific portion of the charge to be reread, and the court did so with the consent of both counsel. At no time did any party raise any question that the jury was confused, nor did they take exception to the supplemental instruction.
Under these circumstances, the verdict will not be set aside on the basis of the defendant's claimed error. CT Page 6894
 II.
The defendant next claims that the court's instructions as to damages were inadequate in view of recent law as well as plaintiff's counsel's improper remarks during closing argument.
The defendant attacks the court's charge in two respects. First, the defendant claims that the court should have instructed that the jury could award damages on items that the plaintiff claimed, but were in no way compelled to do so, even if they found liability in the plaintiff's favor. Second, the defendant claims that the court gave inadequate instructions regarding plaintiff's counsel's reference to the effects of the jury's verdict on the community.
In reviewing the charge, the court finds that the jury was adequately instructed in both respects. Regarding the award of damages, the jury was instructed to award damages for only those damages proven by the plaintiff, and that the jury was not required to award compensation if they determined that the expenses were not fair, just and reasonable or reasonably related to the proven injuries.[3] Further, regarding plaintiff's counsel's reference to the effects of the jury's verdict on the community, defense counsel requested a curative instruction prior to the court beginning its charge. (Transcript of 3/22/01 at 48.) The court indicated to counsel that the issue was dealt with in the court's charge. Id. The court thereafter instructed the jury not to give any award based upon sympathy or improper motive.[4] Neither counsel took exception to the court's charge in either respect.
"In determining whether the trial court's instructions are proper, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error." (Brackets in original; internal quotation marks omitted.) Geary v.Wentworth Laboratories Inc., 60 Conn. App. 622, 627 (2000). Since the court finds that the jury was properly charged, the verdict will not be set aside on that basis.
The defendant also claims that the court should set aside the verdict as the weight of the evidence indicated that the jury did not correctly apply the law on damages. Citing Wichers v. Hatch, 252 Conn. 174 (2000), the defendant claims that the court should have instructed the jury that they could have awarded damages on items that the plaintiff claimed, but were in no way compelled to do so, even if they found liability in the plaintiff's favor. CT Page 6895
In reviewing the jury's award of damages, "the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue. That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do, "Daigle v. Metropolitan Property Casualty Ins. Co.,60 Conn. App. 465, 477-78, cert. granted, 255 Conn. 915 (2000). In the present case, evidence was presented at trial that the plaintiff suffered a stroke in 1993 caused by the medical negligence of the defendant's employees. Competent evidence was presented showing economic loss for his employment, as well as for his past and future care. He has been unable to return to his job as a nurse anesthetist. He is barely able to ambulate and spends a majority of his time in a wheelchair. He has endured scores of sessions for therapies and rehabilitation. He currently requires treatment and care and will also require it in the future . .
The jury awarded a total amount of eight hundred thousand dollars. While the amount is certainly not a paltry sum, given the extent of his stroke and resulting disability, the award does not shock the sense of justice of the court, nor does it lead the court to believe that the jury was influenced by partiality, prejudice, mistake or corruption. Therefore, the verdict will not be set aside on that basis.
 III.
The defendant next claims that the court's charge on the statute of limitations was inadequate. Specifically, the defendant claims that the court should have instructed the jury that the plaintiff had a duty to investigate his potential claim for malpractice within the two year statutory deadline.
The applicable statute of limitations in this case is found at General Statutes § 52-584:
 "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before CT Page 6896 the pleadings in such action are finally closed."
While the statute is not written in the clearest of language, the court gave instructions based on the prevailing case law.[5] The Appellate Court has most recently addressed the statute of limitations inMountaindale Condominium Association, Inc. v. Zappone, 59 Conn. App. 311, cert. denied, 254 Conn. 947 (2000).
 "In the context of applying § 52-584 to decide whether a particular action was commenced in a timely fashion, we have stated that an injury occurs when a party suffers some form of actionable harm. . . . Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury. . . . The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories. . . . Although an expert opinion may lead to discovery of an actionable harm; . . . it does not follow that a plaintiff cannot reasonably discover an injury absent verification by a qualified expert. . . . With respect to the language of § 52-584, our Supreme Court has stated, [t]o hold that a claimant has an option to present his claim within one year from the actual discovery of actionable harm rather than from the time when such harm in the exercise of reasonable care should have been discovered would render the latter phrase superfluous and wholly ineffective in requiring reasonable diligence on the part of claimants."
(Internal quotation marks omitted; citations omitted.) Id., 323-24.
The defendant claims that the court should have charged the jury that the plaintiff had a duty to investigate the potential claim of malpractice. General Statutes § 52-584 however, does not impose such a standard, requiring only "the exercise of reasonable ". "Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." Mountaindale CondominiumAssociation, Inc. v. Zappone, supra, 323. Since no affirmative duty to investigate is imposed on the plaintiff, the verdict will not be set aside on the basis of the claimed errors in the charge. CT Page 6897
 IV.
The defendant next claims that the court erred in not allowing a letter written by the plaintiff to be introduced at trial. That issue was decided after considerable argument and deliberation at the time of trial. The court notes that during the trial, both parties attempted to admit statements of their party opponents, only after the completion of lengthy testimony by the respective party. "There are situations where the potential prejudicial effect of relevant evidence would suggest its exclusion. These [include] . . . where the evidence offered and the counterproof will consume an undue amount of time. . . ." State v.DeMatteo, 186 Conn. 696, 702-03 (1982). The admission of the statements would have caused considerable delay of the trial as the party would likely have had to be recalled to explain the statements. Further, the information sought to be admitted was cumulative. The court is satisfied with the rulings made at trial.
 V.
The defendant also claims that the verdict as to the issues of liability and statute of limitations was contrary to the evidence. With reference to liability, the defendant claims that even if the defendant was admitted to the hospital, he probably would have been released the next day, and any treatment rendered to him on March 12, 1993, would not have made any difference in his resulting condition. Regarding the statute of limitations, the defendant claims that the plaintiff, as a registered nurse, knew of his stroke in May of 1993, and thus had knowledge of actionable harm at that time.
"The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict, but should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that [the jurors] or some of them were influenced by prejudice, corruption or partiality. . . . Within these parameters, furthermore, the trial court may set a verdict aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury'. . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion. . . . Limiting that discretion, however, is the litigants' constitutional right to have issues of fact determined by a jury where there is room for a reasonable difference of opinion among fair-minded jurors." (Brackets in original; CT Page 6898 citations omitted; internal quotation marks omitted.) American NationalFire Ins. Co. v. Schuss, 221 Conn. 768, 774 (1992).
The court finds that there was ample evidence presented on the issues of liability and the statute of limitations upon which the jury could reasonably have based its verdict. The plaintiff presented as witnesses Doctors Martin Kohn and Harris Fisk. Doctor Kohn testified that the defendant's agents breached their standard of care by not admitting the plaintiff to the hospital after he appeared in the emergency room on March 10, 1993, with various symptoms of a stroke. Doctor Fisk testified that the hospital's failure to admit the plaintiff and properly monitor him caused his stroke and resulting deficits.
On the issue of the statute of limitations, the plaintiff testified that he did not begin to suspect the defendant's negligence and did not discover actionable harm until such time as he read a magazine article on strokes in 1995.
Therefore, there being some evidence upon which the jury could reasonably have based its verdict for both liability and the statute of limitations, the court will not set the verdict aside.
 VI.
The defendant also claims that the verdict should be set aside as the verdict was excessive as a matter of law. The court has discussed in Section II that the verdict does not shock the sense of justice of the court, nor does it lead the court to believe that the jury was influenced by partiality, prejudice, mistake or corruption, given the extent of the plaintiff's stroke and resulting disability. Since there was ample evidence upon which the jury could reasonably have based its verdict on damages, the court will not set the verdict aside.
CONCLUSION:
All of the defendant's post trial motions are denied in their entirety.
Matasavage, J.